FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Oct 08, 2024

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ROSA R.-S. *o/b/o* AMY M., *deceased*<br><br>Plaintiff,<br><br>v.<br><br>MARTIN O'MALLEY,<br>COMMISSIONER OF SOCIAL<br>SECURITY,[1]<br><br>Defendant. | NO:  1:22-CV-03111-LRS<br><br>ORDER REVERSING AND<br>REMANDING THE<br>COMMISSIONER'S DECISION FOR<br>AN IMMEDIATE AWARD OF<br>BENEFITS |

BEFORE THE COURT are the parties' briefs.  ECF Nos. 11, 15.  This matter was submitted for consideration without oral argument.  Plaintiff is represented by attorney D. James Tree.  Defendant is represented by Special Assistant United States Attorney Michelle A. Pavelek.  The Court, having reviewed the administrative

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023.  Pursuant to Rule 25(d) of the Rules of Civil Procedure, Martin O'Malley is substituted for Kilolo Kijakazi as the Defendant in this suit.

ORDER - 1

record and the parties' briefing, is fully informed.  For the reasons discussed below, Plaintiff's brief, ECF No. 11, is granted and Defendant's brief, ECF No. 15, is denied.

## JURISDICTION

Amy M. [2] (Plaintiff) filed for disability insurance benefits and for supplemental security income on July 30, 2014, alleging in both applications an onset date of May 1, 2013.  Tr. 348-62.   Benefits were denied initially, Tr. 186-93, and upon reconsideration, Tr. 198-217.  Plaintiff appeared at hearings before an administrative law judge (ALJ) on March 13, 2018, and February 25, 2020.  Tr. 37-89.  On March 19, 2020, the ALJ issued an unfavorable decision, Tr. 12-36, and the Appeals Council denied review.  Tr. 1-6.  On September 18, 2020, Plaintiff passed away at the age of 36 and her mother was substituted as a party. [3]  Tr. 2568, 2696. Plaintiff appealed to the U.S. District Court for the Eastern District of Washington, and on July 12, 2021, the undersigned remanded the case pursuant to the stipulation of the parties.  Tr. 2551-59.  After a second hearing on June 7, 2022, the ALJ issued

---

[2] The last initials of the claimant and the substituted party are used to protect privacy.

[3] For ease of reference, the deceased claimant, Amy M., and the substituted party, Rosa R.-S., are referred to as "Plaintiff" throughout this decision.

ORDER - 2

a second unfavorable decision on June 17, 2022.  Tr. 2456-93.  The matter is now before this Court pursuant to 42 U.S.C. § 405(g).

## BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner, and are therefore only summarized here.

Plaintiff was 36 years old at the time of the 2020 hearing.  Tr. 60.  She had work experience as a fast-food worker, pharmacy technician, and hospital admitting clerk.  Tr. 85.  Plaintiff was hospitalized for a bipolar episode about a month before the hearing.  Tr. 62.  At the time of the episode, she had not been on her bipolar medication.  Tr 63.  She testified that she was morbidly obese, but she had lost approximately 90 pounds over the previous year.  Tr. 63, 76.  She had anxiety and depression and would get nervous around certain people or around large groups of people.  Tr. 64, 67.  Before her hospitalization, her mental health was somewhat better.  Tr. 73.  She had intestinal issues leading to diverticulitis surgery.  Tr. 70.  Although she developed gallstones after surgery, her digestive issues improved.  Tr. 70.  She contracted COVID-19 on June 1, 2020, delivered a daughter in September 2020, and died a few days later due to a pulmonary embolism.  Tr.  2501, 2503, 2696.

ORDER - 3

# STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."  *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012).  Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless."  *Id*.  An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."  *Id*. at 1115 (quotation and citation omitted).  The party appealing the ALJ's decision generally

bears the burden of establishing that it was harmed.  *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

### FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do [his or her] previous work[,] but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the

claimant's impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

ORDER - 6

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner should conclude whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).  If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers

ORDER - 7

in the national economy." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

### ALJ'S FINDINGS

At step one, the ALJ found Plaintiff did not engage in substantial gainful activity after the alleged onset date of May 1, 2013. Tr. 2463. At step two, the ALJ found that Plaintiff had the following severe impairments: lumbar degenerative disc disease; obesity; asthma; obstructive sleep apnea; diverticulitis; and affective disorder (depressive disorder vs. bipolar disorder). Tr. 2463. The ALJ also found that beginning on June 1, 2020, Plaintiff had the additional severe impairment of COVID-19 infection. Tr. 2464.

At step three, the ALJ found that before June 1, 2020, Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. Tr. 2464. The ALJ then found that before June 1, 2020, Plaintiff had the residual functional capacity to perform light work with the following additional limitations:

> [S]he could lift and/or carry 10 pounds occasionally and frequently and she [should] be provided with a sit/stand at will option at work (i.e., the ability to assume a standing or sitting posture as desired throughout the workday). The claimant could occasionally stoop, but never crouch, crawl, kneel, or climb ramps, stairs, ropes, ladders or scaffolds. The claimant needed to avoid concentrated exposure to pulmonary irritants, such as smoke dust, odors, fumes, and chemicals. The claimant could not work in proximity to hazardous conditions. The claimant could not work at heights.

ORDER - 8

> The claimant could remember, understand, and carry out simple and routine instructions and tasks consistent with the learning and training requirements of SVP level 1 and 2 jobs. The claimant could not have contact with the public. The claimant was capable of working in proximity to, but not in coordination with, coworkers. The claimant could have occasional contact with supervisors. The claimant needed to be provided a routine, predictable workplace.

Tr. 2466.

At step four, the ALJ found that since May 1, 2013, Plaintiff was unable to perform any past relevant work. Tr. 2478. At step five, after considering and Plaintiff's age, education, work experience, and residual functional capacity, the ALJ found that before June 1, 2020, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed such as small products assembler, production assembler, and electric accessories assembler. Tr. 2478-79.

The ALJ then found that beginning on June 1, 2020, the severity of Plaintiff's impairments met the criteria of one of the listed impairments. Tr. 2480. Thus, the ALJ determined that Plaintiff was not disabled before June 1, 2020, but became disabled on that date and continued to be disabled through the date of her death on September 14, 2020. Tr. 2481.

ORDER - 9

**ISSUES**

Plaintiff seeks judicial review of the Commissioner's final decision denying disability income benefits under Title II and supplemental security income under Title XVI of the Social Security Act.  ECF No. 11.  Plaintiff raises the following issues for review:

    1.  Whether the ALJ properly considered Plaintiff's testimony;

    2.  Whether the ALJ properly considered the medical opinion evidence;

    3.  Whether the RFC finding is consistent with disability;

    4.   Whether the ALJ met his burden at step five; and

    5.  Whether the ALJ properly assessed the listings at step three.

ECF No. 11 at 2.

**DISCUSSION**

**A.    Symptom Testimony**

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  *Molina*, 674 F.3d at 1112 (internal quotation marks omitted).  "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show

ORDER - 10

that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *see also Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

In assessing a claimant's symptom complaints, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between her testimony and her conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from

physicians or third parties concerning the nature, severity, and effect of the claimant's condition.  *Thomas*, 278 F.3d at 958-59.

The ALJ found that Plaintiff's medically determinable impairments could reasonably have been expected to produce the alleged symptoms, but that Plaintiff's statements about the intensity, persistence, and limiting effects of those symptoms before June 1, 2020, are not entirely consistent with the evidence.  Tr. 2467.  The ALJ cited six categories of purported inconsistencies in support of this finding: (1) Plaintiff's response to mental health treatment; (2) mental health findings; (3) drug-seeking behavior; (4) inconsistent statements in the record; (5) the longitudinal evidence regarding Plaintiff's physical conditions; and (6) the objective evidence and treatment record regarding Plaintiff's physical symptoms.  Tr. 2467-73.

### 1. *Response to Mental Health Treatment*

The ALJ found Plaintiff's mental complaints are not consistent with evidence that her condition was fairly stable and responsive to treatment.  Tr. 2469-71.  The effectiveness of treatment is a relevant factor in determining the severity of a claimant's symptoms.  20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (2011); *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (determining that conditions effectively controlled with medication are not disabling for purposes of determining eligibility for benefits); *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th

ORDER - 12

Cir. 2008) (recognizing that a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations).

The ALJ noted that Plaintiff had a mental health exacerbation in February 2017, which providers opined was drug-induced after a positive test for methamphetamines. Tr. 2469 (citing Tr. 1360, 1933). She had another exacerbation in January 2020 when she was hospitalized for mania, but she had stopped all of her psychiatric medications. Tr. 2469 (citing 3166, 3171, 3174, 3381-82). Otherwise, the ALJ found Plaintiff's mental symptoms were fairly stable. Tr. 2469-71 (numerous citations). The ALJ concluded that aside from the February 2017 and January 2020 exacerbations due to methamphetamine abuse and medication noncompliance, Plaintiff's mental symptoms were relatively stable and responsive to treatment. Tr. 2471.

Plaintiff points out the ALJ's discussion of the evidence begins in 2017, but she had significant mental health issues since 2013. ECF No. 11 at 11-12. The ALJ's discussion of the evidence includes numerous citations to the record during the period between February 2017 and January 2020 but inexplicably excludes the period from the alleged onset date of May 1, 2013, to February 2017. Tr. 2469-70. During a mental health exam by Dr. Marks in July 2014, she indicated she had been treated with Zoloft in the past which made her symptoms worse, and that she was on the maximum dose of Effexor but was still depressed. Tr. 491. In December 2014, she was still on the maximum dose of venlafaxine (Effexor) but reported increasing

ORDER - 13

depression and insomnia.  Tr.  890-91.  In February 2015, her family took her to the

emergency room for disorientation and an inability to answer questions.  Tr. 696-

709.  The examining physician suspected possible medication interactions.  Tr. 709.

During follow up with her treating provider, it was noted that her urine toxicology

was negative for illegal drugs and the provider was uncertain whether Plaintiff was

experiencing catatonic depression or a psychotic episode.  Tr. 931.  In May 2015,

Plaintiff reported her anxiety and depression had increased, she had low energy, and

she was tearful.  Tr. 966.  At a second mental health exam with Dr. Marks in 2016,

she reported feeling over-medicated.  Tr. 979.  In February 2017, she had a

psychotic episode which may have been attributable to illicit drug use.  Tr. 950,

1280.  It is not apparent that during the period from 2013-2017, Plaintiff's mental

health was stable or controlled by treatment.  Additionally, Plaintiff points out

numerous instances in the record after 2017 where her mental health symptoms

fluctuated despite treatment.  ECF No. 11 at 12-15.  The ALJ's discussion of the

evidence largely overlooks or minimizes findings supporting Plaintiff's allegations.

Tr. 2469-71.  Thus, this is not a clear and convincing reason supported by substantial

evidence.

Plaintiff further argues that the ALJ did not consider the reason she was not

compliant with medication in January 2020.  ECF No. 11 at 15.  If an individual

fails to follow prescribed treatment that might improve symptoms, an ALJ may

find the alleged intensity and persistence of his or her symptoms are inconsistent

with the overall evidence of record. However, an ALJ should not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not have complied with treatment. *See* Social Security Ruling 16-3p, 2017 WL 5180304, at *9 (effective October 25, 2017). Plaintiff cites records suggesting that in January 2020, around the time of her manic episode, stopped taking medication because she thought she was pregnant, as well as other reasons. ECF No. 11 at 15 (citing Tr. 3166, 3192, 3205). The ALJ's failure to consider Plaintiff's reasons for stopping medication means the ALJ's analysis is inadequate.

### 2. *Mental Status Exam Findings and Presentation*

The ALJ found that Plaintiff's mental complaints are not consistent with her benign presentation and mental status exam findings. Tr. 2471-72. The ALJ noted Plaintiff showed signs of depression and anxiety at times, but often had an appropriate mood/affect, cooperative/normal behavior, full alertness/orientation, intact concentration/attention span, normal memory, appropriate hygiene/dress, normal speech, lucid/coherent/goal-directed thought processes, and normal thought content. Tr. 2471-72 (numerous citations). The ALJ found that Plaintiff's typically unremarkable mental status exam findings do not corroborate Plaintiff's description of disabling cognitive, social, and mental dysfunction. Tr. 2472.

Plaintiff argues the ALJ's reasoning is not well-supported by the record, citing instances of abnormal findings in the record. ECF No. 11 at 16-17 (numerous

ORDER - 15

citations).  Plaintiff's citations to the record demonstrate that mental status exams recorded more than just some "signs of depression and anxiety at times" as found by the ALJ.  Over the course of the record, abnormalities were frequently noted, such as presenting as depressed, anxious, sad, angry, with flat affect, distraught, abnormal thought process, memory problems, abnormal fund of knowledge, tearful, unkempt, sad, worried, poor eye contact, agitated, irritated, lethargic, hyperactive, less active or slowed body movements, flat or blunt affect, emotional, dysphoric, and more. ECF No. 11 at 16 (citing *e.g.*, Tr. 573, 575, 606, 728, 855, 861, 939, 988, 1136, 1144, 1148, 1261, 1477, 1505, 1776, 2155, 2320, 2382, 2453, *etc.*).  While the ALJ is the arbiter of conflicts in the evidence, *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599-600 (9th Cir. 1999), in this case the ALJ dismissed or overlooked significant abnormalities in the record.  *See Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984) (noting it is error for an ALJ to ignore or misstate the competent evidence in the record in order to justify his conclusion).  This is not a clear and convincing reason supported by substantial evidence.

### 3.  Drug-seeking Behavior

The ALJ found there is evidence of drug-seeking behavior.  Tr. 2472. Evidence of drug-seeking behavior may undermine a claimant's symptom statements.  *See Edlund*, 253 F.3d at 1157.  The ALJ cited a 2014 hospital visit indicating the Plaintiff appeared in the emergency room complaining of chest pain. Tr. 2472 (citing Tr. 744).  She was admitted to the intensive care unit overnight for

1    cardiac workup which was negative.  Tr. 744.  The physician was able to reproduce

2    Plaintiff's pain and concluded it was musculoskeletal.  Tr. 744.  It was noted that

3    Plaintiff was "verbally abusive to nursing staff," was refused a request for Dilaudid

4    (narcotic), and left the ICU against medical advice.  Tr. 2472 (citing Tr. 744).  The

5    physician indicated Plaintiff exhibited "drug-seeking behavior."  Tr. 744.  The ALJ

6    found the reliability of Plaintiff's self-report regarding her symptoms is undermined

7    by this record.  Tr. 2472.

8         Plaintiff argues this single instance of suspected drug-seeking behavior is

9    insufficient.  ECF No. 11 at 18.  Defendant argues there is additional evidence of

10   drug-seeking behavior in the record.  ECF No. 15 at 20 (citing Tr. 1295, 2403,2405,

11   2406).  The Court cannot affirm the ALJ's credibility decision based on evidence

12   that the ALJ did not discuss.  *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir.

13   2003).  The single instance cited by the ALJ does not reasonably constitute

14   substantial evidence of drug-seeking behavior.  This is not a clear and convincing

15   reason supported by substantial evidence.

16        *4.  Inconsistent Statements*

17        The ALJ found discrepancies and inconsistencies in the record undermine

18   Plaintiff's allegations.  Tr. 2472-73.  The ALJ evaluates a claimant's statements for

19   their consistency, both internally and with other information in the case record.

20   Social Security Ruling 16-3p, 2017 WL 5180304, at *5 (effective October 25, 2017).

21   For example, the ALJ observed that although Plaintiff alleged disability since May

1, 2013, in December 2013 she reported she was looking for a vehicle to buy so that she could look for a job. Tr. 2472 (citing Tr. 577). However, there is no evidence that Plaintiff successfully worked or even looked for work, so this is not a compelling inconsistency which undermines Plaintiff's allegations. Similarly, the ALJ noted that while Plaintiff indicated she stopped work due to her mental conditions (Tr. 388, 1682), in June 2015 she told her counselor that she quit her last job because she wanted to move to Seattle (Tr. 963). Tr. 2472. While an ALJ may consider that a claimant stopped working for reasons unrelated to the allegedly disabling condition, *see Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001), the evidence here is not sufficient to be clear, convincing, or substantial.

The ALJ also noted that while Plaintiff reported her depression keeps her from driving in her June 2015 function report (Tr. 406), the record reflects she was able to drive without problem before and after that date, except on occasions when her car had mechanical issues. Tr. 2472-73 (citing Tr. 582 (3/11/14, "the patient drives"), 586 (3/19/14), 589 (5/29/14), 593 (7/1/14), 597 (7/11/14), 601 (7/17/14), 605 (8/19/14), 979 (6/10/16, "She can drive and has a license."), 1130 (8/4/17, "She is able to drive and has a license[] but her car is broke down currently."), 1177 (5/18/17, "I've been driving my car more."), 2067 (6/27/17, "she does drive but her car isn't working right now.")). Even if Plaintiff misstated or overstated her inability to drive in 2015 (and it is noted that none of the records cited by the ALJ

ORDER - 18

are close in time to the date of Plaintiff's function report), this is not compelling evidence undermining Plaintiff's mental health allegations over the course of the record.

Lastly, the ALJ observed that Plaintiff denied recreational drug use at an emergency department visit in February 2017, but a drug test was positive for methamphetamines.  Tr. 2473 (citing Tr. 1345, 1360).  Inconsistent statements concerning drug or alcohol use can constitute specific, clear, and convincing reasons for rejecting a claimant's testimony.  *See Thomas*, 278 F.3d at 959.  However, this one statement is not sufficient to constitute substantial evidence supporting a finding that Plaintiff made inconsistent statements which undermine her claim.  In all, the inconsistencies statements cited by the ALJ are not compelling or are one-time notes without much context.  As such, they do not constitute a clear and convincing reason for discounting Plaintiff's symptom allegations.

### 5. *Longitudinal Evidence and Objective Findings*

Having found the ALJ erred in considering the mental health record and evaluating Plaintiff's mental health allegations, the Court does not reach the ALJ's findings regarding Plaintiff's physical symptom claims.

## B.    Medical Opinions

Plaintiff argues the ALJ failed to properly evaluate the opinions of N.K. Marks, Ph.D.; David T. Morgan, Ph.D.; Luci Carstens, Ph.D.; Aaron Burdge, Ph.D.; Michael A. Lace, Psy.D.; and Mary L. Pine, PA.  For claims filed before March 27,

2017, there are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant but who review the claimant's file (nonexamining or reviewing physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id*. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id*. (citations omitted).[4]

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by

---

[4] For claims filed on or after March 27, 2017, the regulations changed the framework for evaluation of medical opinion evidence. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. § 404.1520c.

clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1228
(internal quotation marks and brackets omitted). "If a treating or examining doctor's
opinion is contradicted by another doctor's opinion, an ALJ may only reject it by
providing specific and legitimate reasons that are supported by substantial
evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester*, 81 F.3d at 830-31).

    1. *N.K. Marks, Ph.D., David T. Morgan, Ph.D., Luci Carstens, Ph.D., and*
      *Aaron Burdge, Ph.D.*

    Dr. Marks completed DSHS evaluation forms in July 2014 (Tr. 564-68), June
2016 (Tr. 1646-51), and May 2018 (Tr. 1653-58). In 2014, Dr. Marks assessed
marked limitations in five functional areas, including: performing detailed tasks;
performing within a schedule and maintaining attendance; communicating in the
workplace; completing a normal workday and work week; and setting realistic goals
and planning. Tr. 566-67. In July 2014, Dr. Carstens reviewed Dr. Marks' 2014
evaluation and concurred with Dr. Marks' assessment. Tr. 976.

    In 2016, Dr. Marks again assessed marked limitation in five functional areas,
including: performing detailed tasks; performing within a schedule and maintaining
attendance; completing a normal workday and work week; maintaining appropriate
behavior; and setting realistic goals and planning. Tr. 1649. In 2018, Dr. Marks
assessed marked limitations in only two functional areas: performing within a
schedule and maintaining attendance; and setting realistic goals and planning. Tr.
1656.

ORDER - 21

1    In June 2019, Dr. Morgan completed a DSHS evaluation.  Tr. 1665-69.  Dr.

2    Morgan assessed marked limitations in seven functional areas, including:

3    performing within a schedule and maintaining attendance; performing routine tasks

4    without supervision; adapting to changes in a work setting; asking simple questions

5    or requesting assistance; communicating effectively in a work setting; maintaining

6    appropriate behavior; and completing a normal workday and work week.  Tr. 1667.

7    The ALJ gave little weight to the opinions of Dr. Marks, Dr. Morgan, and Dr.

8    Carstens.  Tr. 2474.

9    First, the ALJ found that the marked limitations assessed are not fully

10   consistent with the treatment record since Plaintiff's symptoms were relatively stable

11   and responsive to treatment, except for the exacerbations in February 2017 and

12   January 2020 which were due to substance abuse and medication noncompliance,

13   respectively.  Tr. 2474.  However, this is not a specific, legitimate reason supported

14   by substantial evidence because, as discussed *supra*, the ALJ's failed to properly

15   consider the mental health treatment record.

16   Second, the ALJ found that the opinions of Drs. Marks, Carstens, and Morgan

17   were not consistent with Plaintiff's benign presentation, and that the typically

18   unremarkable mental status exam findings in the record do not corroborate the

19   assessments of marked mental dysfunction.  Tr. 2474-75.  The consistency of the

20   medical opinion with the record as a whole and the amount of relevant evidence that

21   supports a medical opinion are relevant factors in weighing the medical opinion

ORDER - 22

evidence.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).  However, as discussed *supra*, the ALJ's evaluation of the mental status exam findings ignored significant abnormalities over the course of the record.  This is not a specific, legitimate reason supported by substantial evidence.

Next, the ALJ noted that Drs. Marks, Carstens, and Morgan were not aware of the record because Dr. Marks and Dr. Carstens did not review any treatment notes and Dr. Morgan only reviewed a limited number of outside records.  Tr. 2474; *see* Tr. 564, 976, 1646, 1653, 1665.  The extent to which a medical source is "familiar with the other information in [the claimant's] case record" is a relevant factor in weighing a medical opinion.  20 C.F.R. §§ 404.1527(c), 416.927(c).  Nonetheless, the ALJ gave little consideration to the fact that Dr. Marks and Dr. Morgan each examined Plaintiff, and Dr. Marks examined her on three occasions.  Furthermore, the ALJ gave significant weight to the November and December 2014 opinions of Gary Nelson, Ph.D. (Tr. 98-99, 111-12, 124-26, 138-40), the reviewing psychologist, who only reviewed a small portion of the overall record.  The fact that Drs. Marks, Morgan, and Carstens did not review the entire record is insufficient, standing alone, to constitute a specific, legitimate reason for giving less weight to their opinions.

Third, the ALJ found the opinions are not consistent with Plaintiff's activities and that her activities are not what would be expected from someone with the

ORDER - 23

marked mental limitations assessed.  Tr. 2475.  An ALJ may discount a medical source opinion to the extent it conflicts with the claimant's daily activities.  *Morgan*, 169 F.3d at 601-02.  The ALJ found that the marked mental limitations assessed are inconsistent with Plaintiff's ability to frequently babysit her two-year-old nephew, initiating and maintaining two romantic relationships, and being able to actively participate in group counseling sessions.  Tr. 2475 (citing *e.g.,* Tr. 1967, 1974, 1982, 1988, 2039, 2047, 2073, 2146, 2149, 2166, 2199, 2218, 2223, 2256, 2319, 2321).  Plaintiff argues the ALJ failed to explain any inconsistencies, ECF No. 11 at 21, while Defendant notes the ALJ observed that babysitting "is mentally demanding" and Plaintiff engaged in group counseling "without any documented problems."  Tr. 2475; ECF No. 15 at 27.  However, without more, it is not clear that these activities are inconsistent with the marked limitations assessed by Drs. Marks, Morgan and Carstens.

Fourth, the ALJ found that Drs. Marks, Morgan, and Carstens relied on Plaintiff's self-reported limitations.  Tr. 2475.  A physician's opinion may be rejected if it is based on a claimant's subjective complaints which were properly discounted.  *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Morgan*, 169 F.3d at 602; *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989).  The ALJ's conclusion that Plaintiff's self-report is not fully reliable is based on error, as discussed *supra*.  This is not a specific, legitimate reason for rejecting the opinions.

1    The ALJ also found that each of Dr. Marks' opinions and Dr. Morgan's

2    opinion are not supported by their own objective findings.  Tr. 2475-76.  While this

3    may be a specific, legitimate reason when supported by the evidence in some cases,

4    in this instance, the ALJ's findings are not sufficient.  The ALJ may not arbitrarily

5    substitute his or her own judgment for a competent medical opinion, make

6    independent medical findings, or assess an RFC that is not supported by the medical

7    evidence.  *Tackett*, 180 F.3d at 1102-03 (determining an ALJ may not substitute his

8    own interpretation of the medical evidence for the opinion of medical professionals).

9    Here, the ALJ's findings are based on an interpretation of the opinions that fails to

10    account for the professional expertise of the psychologists.  The opinions of Dr.

11    Marks, Dr. Morgan, and Dr. Carstens are essentially uncontradicted, yet the ALJ

12    rejected their opinions in favor of the opinions of the reviewing psychologist, who

13    only reviewed the record through 2014.  Tr. 2474-77.  Accordingly, the ALJ's

14    findings are not properly supported.

15    With regard to Dr. Carsten's July 2014 opinion, the ALJ observed that it

16    relied solely on a review of Dr. Marks' July 2014 opinion.  Tr. 2476.  Because the

17    ALJ's assessment of Dr. Marks' July 2014 opinion is based on error, the finding

18    regarding Dr. Carsten's opinion is also erroneous.

19    Lastly, in 2019, Dr. Burdge reviewed Dr. Marks' 2016 and 2018 evaluations

20    and Dr. Morgan's 2019 evaluation.  Tr. 1694.  Dr. Burdge completed a DSHS

21    Review of Medical Evidence form and opined that the severity and limitations

1    assessed were supported by the available evidence.  Tr. 1694.  The ALJ did not

2    evaluate Dr. Burdge's opinion or mention it in the decision.  Failure to discuss a

3    medical opinion in the record is an error.  *Garrison*, 759 F.3d at 1012.  In addition to

4    the errors in evaluating the opinions of Drs. Marks, Morgan, and Carstens, the ALJ

5    erred by failing to consider Dr. Burdge's opinion.

6        *2.  Michael A. Lace, Psy.D.*

7        Dr. Lace testified as the medical expert in 2020.  Tr. 54-59.  He noted

8    evidence of major depressive disorder, bipolar disorder, and anxiety disorder in the

9    record.   Tr.  He opined that Plaintiff was limited to simple, routine, repetitive tasks,

10   no fast-paced production line type of work, few if any changes in the nature of the

11   tasks throughout the day, a single workplace with no travel, and brief superficial and

12   occasional contact with coworkers, the general public, and supervisors.  Tr. 58.

13       The ALJ gave some weight to Dr. Lace's opinion.  Tr. 2476.  The ALJ noted

14   Dr. Lace testified that Plaintiff had a decompensation in late 2014 and 2015 with

15   marked limitations.  Tr. 56, 59.  The ALJ gave limited weight to this portion of his

16   testimony.  Tr. 2476.  First, the ALJ found it is not fully consistent with treatment

17   notes from 2014 which usually showed Plaintiff presented with normal mood and

18   affect and no acute distress.  Tr. 2476 (citing *e.g.*, Tr. 579-80, 582-83, 587, 590, 598,

19   602, 617-18); *see also* Tr. 677, 781, 906, 925, 2471.  As discussed *supra*, the ALJ's

20   consideration of the treatment record is not based on a fair view of the overall

21   record.  This is not a specific, legitimate reason supported by substantial evidence.

ORDER - 26

1    Second, the ALJ found this portion of Dr. Lace's opinion is not fully

2    consistent with treatment notes from 2015 which reflect that Plaintiff was

3    noncompliant with mental health treatment.  Tr. 2476-77.  While the record does

4    reflect that Plaintiff missed some mental health treatment appointments in 2015, Tr.

5    963-64, 1266, the ALJ's conclusion that Plaintiff's mental symptoms were stable

6    when she was compliant with treatment is unsupported by the record overall, as

7    discussed *supra*.  The ALJ purported to give more weight to the record of

8    longitudinal functioning rather than to evidence of exacerbations, but as discussed

9    throughout this decision, the ALJ's consideration of the longitudinal mental health

10    record is not based on substantial evidence.  As a result, this is not a specific,

11    legitimate reason supported by substantial evidence and the ALJ's consideration of

12    Dr. Lace's opinion is legally insufficient.

13        *3.  Mary L. Pine, PA-C*

14        Having found the ALJ erred in considering the mental health record and

15    psychological opinions, the Court does not reach Plaintiff's challenge to the ALJ's

16    consideration of the physical opinion evidence.

17    **C.    RFC Finding**

18        Plaintiff contends the RFC finding is consistent with disability and that a

19    disability finding should be made on that basis.  ECF No. 11 at 3-4.  The RFC

20    includes limitations of "working in proximity to, but not in coordination with,

21    coworkers" and "occasional contact with supervisors."  Tr. 2466.  Based on

ORDER - 27

vocational expert testimony, the ALJ found that Plaintiff can perform occupations such as small products assembler, production assembler, and electric accessories assembler.  Tr. 2479, 2515.  The vocational expert testified that these are all unskilled jobs and the time it typically takes to learn them is less than one month. Tr. 2518.

Plaintiff's counsel then asked the vocational expert, "So my question is -- is for somebody who's just got a job and they need to be trained by their coworkers, supervisors, but they have an inability to coordinate -- work in coordination and only occasional supervisor contact, is this person going to be able to make it through this training period, or is this more like a -- somebody who needs like a job coach situation?"  Tr. 2518.  The vocational expert testified, "Yes.  That would be more of a – an accommodation, needing a job coach situation, if they're needing more than – more than that level of supervision."  Tr. 2518-19.

According to Plaintiff, this testimony compels disability because a person who cannot work without a job coach or accommodation is limited to sheltered work, and a person who cannot survive the training period is limited to short-term jobs, which is not consistent with substantial gainful activity.  ECF No. 11 at 4 (citing *Thompson v. Schweiker*, 665 F.2d 936, 939 (9th Cir. 1982); *Gatliff v. Comm'r of Soc. Sec. Admin.*, 172 F.3d 690, 694 (9th Cir. 1999)).  Defendant argues that the vocational expert testified that an individual "needing more than that level of supervision" would require an accommodation, not that a person with Plaintiff's RFC would need

ORDER - 28

accommodation.  ECF No. 15 at 7; Tr. 2518-19.  However, this interpretation takes the vocational expert's statement out of context.  The Court agrees with Plaintiff and finds that the only reasonable interpretation of the vocational expert's testimony in context is that a person with Plaintiff's limitations, including occasional contact with a supervisor, would need an accommodation to get through the training period.

This district has noted that a limitation to occasional interaction with supervisors is "not in itself generally disabling."  *Elizabeth K. v. Kijakazi*, No. 1:22-CV-03023-MKD, 2023 WL 5209710, at *4 (E.D. Wash. Aug. 14, 2023) (collecting cases).  However, as in *Elizabeth K.*, in this case the vocational expert gave testimony suggesting that Plaintiff may not be able to complete the training period without accommodation.  The ALJ did not clarify the testimony, did not reconcile the potential inconsistency with testimony about available jobs, and did not offer an explanation as to why this testimony was rejected.  Therefore, the ALJ erred at step five.

## D.    Other Issues

Because the Court finds remand for an immediate award of benefits is appropriate for the reasons discussed *supra*, the Court need not address the other issues raised by Plaintiff.  *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternate ground for remand.").

## E.    Remedy

Plaintiff contends the appropriate remedy is to remand for an award of benefits. ECF No. 11 at 26. "The decision whether to remand a case for additional evidence, or simply to award benefits is within the discretion of the court." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*, 761 F.2d 530 (9th Cir. 1985)). When the Court reverses an ALJ's decision for error, the Court "ordinarily must remand to the agency for further proceedings." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation"); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014).

However, in a number of Social Security cases, the Ninth Circuit has "stated or implied that it would be an abuse of discretion for a district court not to remand for an award of benefits" when three conditions are met. *Garrison*, 759 F.3d at 1020 (citations omitted). Under the credit-as-true rule, where (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand, the Court will remand for an award of benefits. *Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017). Even where the three prongs have been satisfied, the Court will not remand for immediate payment of benefits if "the record

as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021. Here, the Court finds that each of the credit-as-true factors is satisfied and that remand for the calculation and award of benefits is warranted.

As to the first element, administrative proceedings are generally useful where the record "has [not] been fully developed," *Garrison*, 759 F.3d at 1020, there is a need to resolve conflicts and ambiguities, *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995), or the "presentation of further evidence ... may well prove enlightening" in light of the passage of time, *I.N.S. v Ventura*, 537 U.S. 12, 18 (2002). *Cf. Nguyen*, 100 F.3d at 1466-67 (remanding for ALJ to apply correct legal standard, to hear any additional evidence, and resolve any remaining conflicts); *Byrnes v. Shalala*, 60 F.3d 639, 642 (9th Cir. 1995) (same); *Dodrill*, 12 F.3d at 918, 919 (9th Cir. 1993) (same); *Bunnell v. Sullivan*, 947 F.2d 341, 348 (9th Cir. 1991) (en banc) (same). Defendant argues there was "serious doubt" that Plaintiff was disabled before June 1, 2020, and that award of benefits is not warranted. ECF No. 15 at 29. However, this matter has been pending since 2018, there have been three hearings with testimony from three vocational experts and a medical expert, and the ALJ has reviewed the evidence twice. There are multiple psychological opinions indicating that Plaintiff had disabling limitations. Tr. 564-68, 976, 1646-51, 1653, 1665-69, 1694. The medical record is complete as Plaintiff is now deceased. Thus, further proceedings to develop the record or resolve conflicts are not necessary.

As to the second prong, the ALJ erred in evaluating Plaintiff's mental limitations and the psychological opinions, and also failed to provide any reason for rejecting the vocational expert's testimony that a person with Plaintiff's RFC might need an accommodation to get through the training period, as discussed *supra*. Therefore, the second prong of the credit-as-true rule is met.

The third prong of the credit-as-true rule is also satisfied because if Plaintiff's testimony regarding her mental health limitations, the medical opinions, and the testimony of the vocational expert were credited as true, the ALJ would be required to find Plaintiff disabled.

Finally, the record as a whole does not leave serious doubt as to whether Plaintiff was disabled before June 1, 2020. *Garrison*, 759 F.3d at 1021. The psychological opinions overwhelmingly reflect that Plaintiff had disabling mental limitations over the course of the record. Moreover, the credit-as-true rule is a "prophylactic measure" designed to motivate the Commissioner to ensure that the record will be carefully assessed and to justify "equitable concerns" about the length of time which has elapsed since a claimant has filed their application. *Treichler*, 775 F.3d at 1100 (internal citations omitted). The Ninth Circuit has exercised discretion and applied the "credit as true" doctrine because of a claimant's advanced age and "severe delay" of seven years in her application. *Vasquez*, 572 F.3d at 593-94. Here, Plaintiff's case has been pending for six years and she died while the case was pending. The ALJ failed to fairly assess the mental health record as to Plaintiff's

symptoms, failed to fairly consider the psychological opinions, and failed to fully account for the vocational expert's testimony or provide an explanation for rejecting it.  Under these circumstances, it is appropriate for this Court to use its discretion and apply the "credit as true" doctrine pursuant to Ninth Circuit precedent and find that immediate award of benefits is appropriate in this case.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this Court concludes the ALJ's decision is not supported by substantial evidence and free of harmful legal error.

Accordingly,

1.    Plaintiff's Brief, **ECF No. 11**, is **GRANTED**.

2.    Defendant's Brief, **ECF No. 15**, is **DENIED**.

3. This case is **REVERSED** and **REMANDED** for immediate calculation and award of benefits consistent with the findings of this Court.

**IT IS SO ORDERED**.  The District Court Clerk is directed to enter this Order and provide copies to counsel.  Judgment shall be entered for the Plaintiff and the file shall be **CLOSED**.

**DATED** October 8, 2024.

_____
LONNY R. SUKO
Senior United States District Judge

ORDER - 33